## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| **Joyce Gallimore,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action File No.** |
| | ) | 2:21-CV-268-RWS |
| **Eric S. Hollifield and Jennifer** | ) | |
| **Hollifield,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DAMAGES AND
## EQUITABLE AND INJUNCTIVE RELIEF

Plaintiff Joyce Gallimore files this Complaint against Defendants Eric S. Hollifield ("E. Hollifield") and Jennifer Hollifield ("J. Hollifield") (jointly "Defendants") and alleges as follows:

## SUMMARY

1.     E. Hollifield is the son of Plaintiff's cousin with whom Plaintiff was very close. E. Hollifield was Plaintiff's investment advisor and broker while associated with LPL Financial LLC ("LPL") and managed an investment account Plaintiff had at LPL. On August 11, 2020, E. Hollifield stole $1.24 million out of Plaintiff's account at LPL by causing an unauthorized wire transfer to be made to the escrow account of a

law firm located in Georgia.  E. Hollifield used the wired money that same day to buy a house on and acreage in Winder, Barrow County, Georgia, for approximately $1.7 million in the name of both him and his wife ("the Property").  Over the next year, E. Hollifield then repeatedly lied to Plaintiff, her husband Sam Swanson ("Swanson") and third parties about what happened to the wired money and where it was located.  In the late Summer 2021, Plaintiff was able to discover the fraud.  E. Hollifield was then terminated from LPL on September 1, 2021, and on September 29, 2021, consented to a Letter of Acceptance, Waiver and Consent with the Financial Industry Regulatory Authority ("FINRA") that permanently barred him from the securities industry.

Plaintiff now seeks damages from E. Hollifield for the fraud and also seeks an order from this Court preventing Defendants from directly and indirectly, transferring, selling, disposing of, pledging, encumbering, assigning, liquidating, or granting or incurring a lien or security interest or other interest in, the Property or damaging, destroying or changing the Property pending final adjudication of this action.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 18 U.S.C. §1332(a)(1) because this dispute is between citizens of different states and complete diversity of citizenship exists and because the amount in controversy

exceeds $75,000, exclusive of interest and costs.  Plaintiff is a citizen of Vermont. Defendants are citizens of Georgia.  Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).

3.      Venue in this district is proper under 28 U.S.C. §1391(b)(1) and (b)(2) because Defendants reside in this district and because a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated in the Northern District of Georgia.

## THE PARTIES

4.      Plaintiff is seventy-one (71) years old.  Her professional background is in public health.  She is retired but still performs volunteer work with community organizations and other not for profit organizations whose missions relate to public health, sustainable communities and sustainable transportation. She currently resides at 17 Harbor Ridge Road, S Burlington, Vermont 05403.  She is a citizen of the State of Vermont.

5.      Defendant E. Hollifield currently resides at 580 Maddox Road, Winder, Barrow County, Georgia 30680.  E. Hollifield is a citizen of the State of Georgia.  E. Hollifield entered the securities industry in 1998 and has held Series 7 and 66 securities licenses.  In addition to being associated with several other firms,

between October 2016 and September 2021, E. Hollifield was a registered representative associated with LPL.  LPL terminated E. Hollifield on September 1, 2021.  On September 29, 2021, E. Hollifield consented to a Letter of Acceptance, Waiver and Consent with FINRA that permanently barred him from the securities industry.  E. Hollifield was also a founder, managing partner, principal and investment advisor representative with Hamilton Investment Counsel, LLC ("Hamilton") beginning in 2016.  Hamilton terminated E. Hollifield in or about October 2021.  E. Hollifield is married to J. Hollifield.

6.    Defendant J. Hollifield is E. Hollifield's spouse.   J. Hollifield currently resides at 580 Maddox Road, Winder, Barrow County, Georgia 30680.  J. Hollifield is a citizen of the State of Georgia.

## **FACTS**

### ***Background***

7.    Prior to having E. Hollifield manage certain investments for her, Plaintiff's parents used E. Hollifield to manage their investments.  When Plaintiff's mother passed away in October, 2016 and the estate was settled in 2017, Plaintiff inherited money that was in an account maintained by her mother at LPL and managed by E. Hollifield.  Since E. Hollifield had managed the assets of her mother and father, and Plaintiff was very close to Hollifield's mother who was

Plaintiff's cousin, Plaintiff felt she could trust E. Hollifield and opened an account with him at LPL using her inherited funds.

8.      Hollifield managed the inherited funds in Plaintiff's LPL account from approximately February 2017 through July 2021. Prior to learning of E. Hollifield's misconduct, Plaintiff reposed trust and confidence in E. Hollifield and relied on his expertise and advice regarding her investments.

9.      In August 2020, E. Hollifield, who had previously told Plaintiff that he specialized in bonds, contacted Plaintiff and told her he thought it would be wise to sell the bonds in her account and retain the funds in cash.  Plaintiff told E. Hollifield she wanted Swanson to be able to participate in the call and hear what E. Hollifield was proposing.  As a result, E. Hollifield and Plaintiff scheduled a call for Tuesday, August 11, 2020, to address the details of the proposal.

10.     On August 11, 2021, E. Hollifield, Plaintiff and Swanson had a telephone call in which E. Hollifield explained that he believed there was a significant risk that bonds would decline in value and, therefore, recommended that the bonds in Plaintiff's account be sold because it was a "good time to sell the bonds" and convert them to cash.  E. Hollifield said that the bond markets faced the risk of significant interest rate increases which would reduce the value of the bonds in Plaintiff's account.  E. Hollifield recommended that Plaintiff hold the sales proceeds in cash until the markets settled and he could identify good

investment options.  He further said he would move the cash that resulted from selling those bonds to a Marcus savings account at Goldman Sachs to be set up in her name where the funds would earn an additional one-half of one percent (1/2%) than could be earned if the funds remained in the LPL account.  E. Hollifield told Plaintiff and Swanson that he had made the same recommendation to Plaintiff's sister and brother-in-law who were also clients of his.  E. Hollifield said the funds could be put there until market conditions settled out and the funds could then be invested with less risk.  Plaintiff accepted E. Hollifield's recommendation for this investment strategy.

11.    During the August 11, 2020 conversation with Plaintiff and Swanson, E. Hollifield failed to disclose to Plaintiff that he had already sold various positions in Plaintiff's LPL account the day before without her authorization to do so.

### *The Fraudulent Wire Transfer*

12.    On August 11, 2020, E. Hollifield caused a wire transfer to be made in the amount of $1.24 million out of Plaintiff's account at LPL to Renasant Bank for further credit to the escrow account of Strickland & Lindsay, a law firm located in Winder, Georgia.  That wired money was then used that same day by Defendants to buy a house sitting on approximately 37 acres of land in Winder, Barrow County, Georgia, for $1,746,000 in the name of both Defendants.  The Property is more fully

described in the legal description attached hereto as Exhibit A and located at and referred to as 580 Maddox Road, Winder, Barrow County, Georgia 30680. The paperwork for that wire transfer began at 5:49 a.m. on the morning of August 11, 2020.

13.    Plaintiff did not sign any documentation in connection with the wire transfer nor approve a wire transfer for the personal benefit of Defendants. The DocuSign wire transfer documents show that the electronic signatures of E. Hollifield and Plaintiff were both affixed from computers or electronic devices which were located in Georgia and were done almost simultaneously. Plaintiff never signed such a document and was not physically present in Georgia when her purported electronic signature was affixed to the wire transfer documents. No one from LPL attempted to contact Plaintiff to verify anything related to the wire transfer.

14.    Plaintiff received a letter dated August 12, 2020 from LPL which stated there was a wire transfer in the amount of $1.24 million from Plaintiff's LPL account to "Renasant Bank". Although Plaintiff was not familiar with Renasant Bank, she assumed it was associated in some way with Goldman Sachs or with the transfer of the money to Goldman Sachs for the Marcus account. Nothing she received from LPL indicated who was the actual recipient of the wire transfer.

15.    Plaintiff did not know that the wired money was going to be used by

Defendants to personally buy the Property.  Moreover, Plaintiff did not "gift" or "loan" the money to Defendants or authorize the purchase of the Property as an "investment."  At no time did E. Hollifield tell Plaintiff that he intended to use the wired money to purchase the Property for him and his wife personally or that he intended to use the money for any personal purpose.  At no time did Plaintiff authorize Hollifield to use the money to purchase the Property for him and his wife personally or use the money for any personal purpose.  If Plaintiff had been told by E. Hollifield that he intended to use the wired money to purchase the Property for him and his wife, Plaintiff never would not have authorized the transfer of the funds out of her LPL account.

16.    Plaintiff did not learn until August 2021 that Defendants used the money to buy the Property.

**_The Attempted Cover-Up Of The Theft By E. Hollifield And The Ongoing Fraudulent Statements By Him To Plaintiff, Swanson And Others_**

17.    Over the next year, E. Hollifield repeatedly lied to Plaintiff, Swanson and third parties about what happened to the money and where it was located.

18.    In October, 2020, when Plaintiff had not received any information from Goldman Sachs about the Marcus account, Swanson emailed E. Hollifield asking him about that fact.  E. Hollifield responded that he would take care of it but did not.  In December, 2020, Swanson again emailed E. Hollifield asking him to

provide documentation for Plaintiff's Goldman Sachs account, but no documentation was provided.

19.     In January 2021, Plaintiff received an electronic notice from Goldman Sachs that an account had been opened for "Joyce Swanson".  "Swanson" was the last name of Plaintiff's husband, but she did not use it as her last name.  Plaintiff did not open this account but obtained log in information so she could log into the account. When she logged into the account, the account showed it had a zero balance.  So Plaintiff and Swanson again contacted E. Hollifield and asked why the $1.24 million was not in the Goldman Sachs account.  In February 2021, again both Plaintiff and Swanson emailed E. Hollifield asking him where the money was. At various times, E. Hollifield blamed LPL, Goldman Sachs or both for why the money was not showing up at Goldman Sachs.  For example, he told Plaintiff or Swanson that there were persistent problems with the account registration at Goldman Sachs, he was having difficulty getting Goldman Sachs to solve the problem because there was no one readily available to respond, there had been a mix up with how Plaintiff's name was recorded on the account at Goldman Sachs, LPL was slow in responding because of the pandemic, LPL did not answer phones, and LPL employees were working remotely.  But E. Hollifield always assured them that the money was there.  Eventually E. Hollifield told Plaintiff that the

funds were in a general account at Goldman Sachs and that Goldman Sachs had committed to paying interest on the funds from the date the funds were wired to it.

20.     In March 2021, Plaintiff received notice from Goldman Sachs that her account there was being closed because there had been no deposits into the account.  Prior to that time, E. Hollifield repeatedly lied to Plaintiff, telling her that Goldman Sachs was calculating the interest that was due her on the money that should have appeared in her Goldman Sachs account.  He even went so far as to email Plaintiff the actual calculation of interest due from Goldman Sachs.

21.     In late March 2021, Plaintiff continued to ask E. Hollifield for evidence as to where the wired money was because it was not showing up but received none.  Finally, on March 30, 2021, E. Hollifield called Plaintiff and Swanson and told them the funds were being returned from Goldman Sachs to Plaintiff's LPL account where Plaintiff would see them appear.

22.     In April 2021, both Plaintiff and Swanson continued to ask E. Hollifield for confirmation that the wired money was, in fact, back in Plaintiff's LPL account but received no assurance.

23.     On May 3, 2021, E. Hollifield sent Plaintiff a screenshot of the purported LPL account as of April 30, 2021 showing a "net addition" of $1.24 million to the account.  E. Hollifield further told Plaintiff that he had received the money back from Goldman Sachs, that he would also get her the interest she had not received and

that the best solution would be to transfer all that cash to Plaintiff since he told her the funds were now available for use.  Unbeknownst to Plaintiff, this screenshot was a fraudulent document.  In reality, none of the $1.24 million in wired funds was ever returned to Plaintiff's LPL account or otherwise. A copy of this document is attached hereto as Exhibit B.

24.     During May 2021, E. Hollifield was becoming much less communicative with Plaintiff despite her and Swanson's repeated attempts to get answers to their basic questions.  In June 2021, Plaintiff again emailed E. Hollifield asking for an explanation as to why the $1.24 million was not showing up in the LPL account as he had told them.  At that time, Plaintiff decided to transfer all the funds in her LPL account, which E. Hollifield had told her included the $1.24 million in wired funds that had been returned to her LPL account, to a Cetera brokerage account managed by Rick Anthony ("Anthony"), a wealth manager with whom Plaintiff and Swanson had a long-term relationship.  E. Hollifield promised to comply with this request and assured Plaintiff the transfer would include the $1.24 million.

25.     The securities and cash in Plaintiff's LPL account were transferred on July 28, 2021 via a wire transfer.  But when Cetera received what was in the LPL account, it did not include the $1.24 million.  Anthony's firm called E. Hollifield to find out why the transfer did not include the $1.24 million.

26.     On July 30, 2021, Therese Shaan ("Shean"), Anthony's colleague at Cetera, telephoned E. Hollifield.  She did not reach him and left a voice message. E. Hollifield then called Shean back and told her he would forward paperwork to her to do the transfer but that LPL took a few days to do a wire.  Knowing that a wire should not take "a few days", Shean asked E. Hollifield to send an account statement for Plaintiff's LPL account, but E. Hollifield said he could not provide a statement.

27.     After her call with E. Hollifield concluded, Shean immediately sent an email to E. Hollifield that same day July 30, 2021 to confirm what he told her.  On August 2, 2021, Shean resent the same email to E. Hollifield at an additional email address for him to make sure he received it.  Both emails confirmed that E. Hollifield told Shean that:

(a)     The $1.24 million in cash that was not transferred to Plaintiff's new brokerage account was not held at LPL in her account but was "linked but in a different account held at Hamilton Investments where you are dually licensed as a Registered Investment Advisor.  *You confirmed that the funds are held in money market accounts*";

(b)     "You confirmed that no bonds were sold in July 2021 in account # 5378-0075.  You explained that there were no bond holdings to sell and that you had sold them at an earlier date";

(c)     "You also agreed to provide [Plaintiff] with the account number(s) and to send her **written confirmation of the original deposit of those funds in 2020 with Hamilton Investments and as of July 2021 for her records**"; and,

(d)     "Finally, you confirmed that there is no additional action required on our part to complete the transfer request **and the transfer should be completed by Wednesday August 4th**". (emphasis added).

28.     The $1.24 million was never transferred, although as late as August 19, 2021, E. Hollifield was still telling Plaintiff that the money would be transferred soon.  That was the last contact Plaintiff or Swanson had with E. Hollifield.

### E. Hollifield's Fraud Unravels

29.     On August 23, 2021, Plaintiff called LPL customer service to ask about documents relating to the $1.24 million withdrawal in 2020 and to find out where that wired money had gone.  The LPL representative only told her that the wire went to Renasant Bank in Winder, Georgia.

30.     Plaintiff then called customer service at Renasant Bank.  When she gave the bank representative the reference number given to her by LPL for the August 11, 2020 wire and the amount of the wire, the representative told Plaintiff that he could not give her any information since her name was not on the account.

He did tell Plaintiff, however, that the account was in the name of Strickland & Lindsay LLP ("S&L").

31.     Plaintiff then called the local branch manager for Renasant Bank in Winder, Georgia.  The branch manager told Plaintiff she could not give her information but that she would reach out to the client, S&L, to tell them about the situation.

32.     The next day, August 24, 2021, Plaintiff received a telephone call from a staff member at S&L.  The S&L staff member told Plaintiff that E. Hollifield wired the money on August 11, 2020 to S&L's escrow account and used the money to purchase the Property with cash that same day.  The S&L staff member further told Plaintiff that when the August 11, 2020 wire came in, it referenced Plaintiff's name.  When they asked E. Hollifield why the funds had Plaintiff's name on them, E. Hollifield told them Plaintiff was a member of his family and falsely stated that Plaintiff wanted him to have the money to purchase the Property.

### _E. Hollifield Is Terminated By LPL, Barred From The Securities Industry By FINRA And Terminated By Hamilton_

33.     LPL terminated E. Hollifield on September 1, 2021.

34.    On September 29, 2021, E. Hollifield consented to a Letter of Acceptance, Waiver and Consent with the FINRA that permanently barred him from the securities industry.

35.    Although E. Hollifield was a founder of Hamilton, Hamilton terminated E. Hollifield in or about October 2021.

***Damages***

36.    As a direct and proximate result of the misrepresentations, acts and omissions of Defendants described above, Plaintiff has suffered actual, compensatory and other damages in the following respects that she is entitled to recover from Defendants:

(a)    $1.24 million was stolen from her as a result of the fraudulent wire transfer on August 11, 2020;

(b)    She has lost opportunity damages because she has been unable to invest the $1.24 million since August 11, 2020, or, alternatively, is entitled to pre-judgment interest from August 11, 2020 through entry of a judgment;

(c)    She has incurred attorneys' fees and other litigation expenses; and,

(d)    She has incurred other expenses and costs related to these matters.

## COUNT ONE – FRAUD
## AGAINST E. HOLLIFIELD

37.    Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

38.    The misrepresentations, acts and omissions described above were made by E. Hollifield to cover up his theft of Plaintiff's money, were made by E. Hollifield who knew they were false when made, were made by E. Hollifield with the intention and purpose of deceiving and defrauding Plaintiff or were made with reckless disregard for the interests of Plaintiff, and Plaintiff justifiably relied to her detriment on these misrepresentations and omissions. Had Plaintiff known the true facts, she would not, among other things, have authorized the sale of the bonds in August 2020, the wiring of $1.24 million out of her LPL account, the establishment of an account at Goldman Sachs and would not have continued to do business with E. Hollifield.

39.    The misrepresentations, acts and omissions described above constitute Georgia common law and statutory fraud by E. Hollifield for which he is liable to Plaintiff.

40.    As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

41.     Plaintiff, therefore, seeks recovery from E. Hollifield for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT TWO – NEGLIGENT MISREPRESENTATION AGAINST E. HOLLIFIELD

42.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

43.     The misrepresentations, acts and omissions described above were false when made by E. Hollifield and, if not made by E. Hollifield intentionally or recklessly, were made negligently to Plaintiff who reasonably relied on them and who suffered economic injury proximately resulting from such reliance.

44.     E. Hollifield knew Plaintiff was relying on the statements made by him with respect to the wire transfer and the status of the $1.24 million.   E. Hollifield intended that Plaintiff refrain from taking any action that would protect her and the money entrusted to E. Hollifield.

45.     Plaintiff reasonably relied upon the false statements made by E. Hollifield and the false documents given her by E. Hollifield.

46.     As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

47.    Plaintiff, therefore, seeks recovery from E. Hollifield for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT THREE – CONVERSION
## AGAINST E. HOLLIFIELD

48.    Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

49.    E. Hollifield was not authorized to use Plaintiff's funds for his and J. Hollifield's personal use or otherwise take Plaintiff's funds.  He improperly and fraudulently assumed and exercised the right of ownership over such funds, and his actions were contrary to Plaintiff's rights.

50.    Plaintiff has demanded that E. Hollifield return the converted money, and he has not complied.

51.    The misrepresentations, acts and omissions described above constitute conversion under O.C.G.A. §16-8-4 for which E. Hollifield is liable to Plaintiff.

52.    As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

53.    Plaintiff, therefore, seeks recovery from E. Hollifield for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT FOUR – BREACH OF FIDUCIARY DUTY
## AGAINST E. HOLLIFIELD

54.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

55.     At all relevant times, E. Hollifield owed to Plaintiff certain fiduciary duties to act with the utmost honesty, integrity, fairness and good faith.  Plaintiff reposed special trust and confidence in E. Hollifield and relied and depended upon his honesty, independence, judgment and expertise.  E. Hollifield knew Plaintiff relied on him.

56.     The misrepresentations, acts and omissions described above constitute a breach of these fiduciary duties by E. Hollifield for which he is liable to Plaintiff.

57.     As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

58.     Plaintiff, therefore, seeks recovery from E. Hollifield for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT FIVE – MONEY HAD AND RECEIVED
## AGAINST BOTH DEFENDANTS

59.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

60.     Defendants placed themselves in the position of receiving and retaining money from Plaintiff and did receive and retain money from Plaintiff to which they were not lawfully entitled.  They have taken the money from Plaintiff improperly and used it for their personal benefit.

61.     Plaintiff has already demanded that E. Hollifield return the money and hereby demands that J. Hollifield return the money.

62.     Defendants should not be permitted to keep the money in equity and good conscience.

63.     As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

64.     Plaintiff, therefore, seeks recovery from Defendants, jointly and severally, for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT SIX – UNJUST ENRICHMENT
## AGAINST BOTH DEFENDANTS

65.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

66.     As a result of the misrepresentations, acts and omissions described above, Defendants have been unjustly enriched at the expense of the Plaintiff.

67.     J. Hollifield has obtained funds or other assets to which she has no legitimate claim and has been unjustly enriched thereby.  Specifically, she obtained an ownership interest in the Property by using Plaintiff's funds to which she was not entitled.  Defendants should be required to disgorge all monies, profits, and gains, which they have obtained at the expense of Plaintiff, including any ownership interest in the Property.

68.     As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

69.     Plaintiff, therefore, seeks recovery from Defendants, jointly and severally, for these actual and compensatory damages, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## <u>COUNT SEVEN – GEORGIA COMPUTER SYSTEMS</u>
## <u>PROTECTION ACT AGAINST E. HOLLIFIELD</u>

70. Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

71. E. Hollifield knowingly transmitted data using computer networks in Georgia that falsely stated that Plaintiff had electronically authorized the August 11, 2020 wire transfer when he knew she had not electronically authorized that transfer of funds to a bank account for the ultimate benefit of him and his wife. E. Hollifield also knowingly transmitted data using computer networks in Georgia on May 3, 2021 that falsely represented to Plaintiff that the $1.24 million was in an account at LPL and/or Hamilton when E. Hollifield knew it was not in any account since he had used it to purchase the Property.

72. The misrepresentations, acts and omissions described above constitute a violation of the Georgia Computer Systems Protection Act, O.C.G.A. §§16-9-93 (d) and (g)(1) for which E. Hollifield is liable to Plaintiff.

73. As a direct and proximate result thereof, Plaintiff has suffered damages as set forth above.

74. Plaintiff, therefore, seeks recovery from E. Hollifield for these actual and compensatory damages, victim expenditures, punitive damages, pre-judgment interest and litigation expenses, including attorneys' fees and costs.

## COUNT EIGHT – EQUITABLE RELIEF
## AGAINST BOTH DEFENDANTS

75.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

76.     Plaintiff faces an imminent threat of irreparable harm if this Court does not restrict Defendants from directly and indirectly, transferring, selling, disposing of, pledging, encumbering, assigning, liquidating, or granting or incurring a lien or security interest or other interest in, the Property or damaging, destroying or changing the Property pending final adjudication of this action.

77.     By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

78.     As a result of the conduct of Defendants described above, Plaintiff is suffering harm and will continue to suffer irreparable harm as a result of Defendants' conduct.   Temporary, preliminary and permanent injunctions are, therefore, necessary to prevent this harm.

79.     The balance of the equities and public policy favor granting an injunction.

80.     Plaintiff has no adequate remedy at law with respect to the equitable relief sought.

81.    Therefore, Plaintiff respectfully requests that a temporary restraining order and/or preliminary injunction issue immediately, ordering Defendants, directly or indirectly, to:

(a)    Refrain from transferring, selling, disposing of, pledging, encumbering, assigning, liquidating, or granting or incurring a lien or security interest or other interest in the Property;

(b)    Refrain from damaging, destroying or materially altering the Property pending final adjudication of this action;

(c)    Perform such preventive maintenance as is necessary to maintain equipment on the Property and reduce the likelihood of failure so that the Property is preserved;

(d)    Perform such emergency repairs, replacement of parts and structural components (such as the roof and HVAC), and such other activities needed to preserve the Property; and,

(e)    Pay all taxes, insurances and utilities on the Property and notify Plaintiff's counsel if they default in the payment of any such obligations.

82.    In addition, by reason of the fraudulent and otherwise wrongful conduct in which Defendants obtained their alleged right, claim or interest in and to the Property, Defendants have no legal or equitable right, claim or interest to the

Property, and Defendants should be deemed to be trustees holding the Property in constructive trust for Plaintiff with the duty to convey the same to Plaintiff.

## COUNT NINE – ATTORNEYS' FEES
## AGAINST BOTH DEFENDANTS

83.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

84.     Because of the conduct of Defendants described, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense so as to entitle Plaintiff to her litigation expenses, including reasonable attorneys' fees, pursuant to O.C.G.A. §13-6-11and §16-9-93 (d) and (g)(1) for the reasons set forth above.

## COUNT TEN – PUNITIVE DAMAGES
## AGAINST BOTH DEFENDANTS

85.     Plaintiff incorporates herein by express reference paragraphs 1 through 36 above as though fully set forth herein.

86.     The misrepresentations, acts and omissions by E. Hollifield constituted willful, malicious and intentional conduct, all with the specific purpose of injuring Plaintiff and so as to entitle Plaintiff to punitive damages under O.C.G.A. §51-12-5.1(f) or were done deliberately and willfully, or with an entire

want of care, so as to raise the presumption of their conscious indifference to the consequences of his misrepresentations, acts and omissions so as to entitle Plaintiff to exemplary or punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a final judgment and award her:

(a)     Actual and compensatory damages, including lost opportunity damages, against Defendants, jointly and severally;

(b)     Pre-judgment interest dating from August 11, 2020 through entry of a judgment;

(c)     Punitive damages against Defendants, jointly and severally, in an amount to be determined at trial;

(d)     All costs and expenses, including attorneys' fees, against Defendants, jointly and severally;

(e)     The equitable relief requested above, including the request for a temporary restraining order, preliminary injunction and permanent injunction, and the request that Defendants be deemed to be trustees holding the Property in constructive trust for Plaintiff with the duty to convey the same to Plaintiff; and,

(f)     Such other and further relief as the Court shall deem just and equitable

under the facts and circumstances of this case.


This 13th day of December, 2021.


/s/ Frank A. Lightmas, Jr.
Frank A. Lightmas, Jr.
Georgia Bar No. 452325
The Law Offices of Frank A. Lightmas
Jr., LLC
Suite 1150, The Peachtree
1355 Peachtree Street, N.E.
Atlanta, GA  30309
franklightmas@mindspring.com
Telephone (404) 876-3335
Telecopier (404) 876-3338
Attorney for Plaintiff


/s/ J. Michael Bishop
J. Michael Bishop
Georgia Bar No. 058610
Smiley Bishop & Porter LLP
6075 Barfield Rd.
Suite 1150
Atlanta, GA 30328
mbishop@sbplllplaw.com
Telephone (770) 829-3858
Telecopier (770) 673-0270
Attorney for Plaintiff

## <u>LOCAL RULE 5.1 CERTIFICATION</u>

I hereby certify that the foregoing COMPLAINT FOR DAMAGES AND EQUITABLE AND INJUNCTIVE RELIEF has been prepared in Times New Roman 14 point font in accordance with Local Rule 5.1.